UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

JAMES D. MYERS,                           )  5:13CV2170
      a.k.a., James D. Meyers,         )
                                  )
         Petitioner              )
                                    )
         v.                         )  JUDGE BENITA Y. PEARSON
                                    )  (Mag. Judge Kenneth S. Mchargh)
                                    )
TERRY TIBBALS,                            )
         Warden,                  )
                                    )
         Respondent            )  REPORT AND
                                    )  <u>RECOMMENDATION</u>

McHARGH, MAG. JUDGE

The petitioner James Myers[1] ("Myers") has filed a petition pro se for a writ of habeas corpus, arising out of his 2010 convictions for three counts of rape, with firearm specifications, one count of kidnapping, and other crimes, in the Summit County (Ohio) Court of Common Pleas.  (Doc. 1.)  In his petition, Myers raises three grounds for relief:

> 1.  The trial court committed reversible error or an abuse of discretion in admitting evidence of the Wisconsin conviction over defense objections.
>
> 2.  The trial court denied the defendant the opportunity to confront the witnesses against him.

---

[1]  Although the caption of the case lists the petitioner's surname as "Meyers," he signed the petition as "Myers," and he is referred to as "Myers" throughout the state record.  (Doc. 1, at [14]; see also doc. 7, at 2.)

3. Trial counsel provided ineffective assistance of counsel which was prejudicial to the defendant.

(Doc. 1.)  The respondent has filed a Return of Writ.  (Doc. 7.)  The petitioner did not

file a Traverse.


## I.  FACTUAL AND PROCEDURAL BACKGROUND

The court of appeals set forth the following factual and procedural

background:

> On the evening of July 1, 2010, A.Y., the victim in the underlying action, went to a local bar called DeeCob's.  The appellant, James D. Myers, was at the bar at the same time.  The victim testified that she returned home around midnight.  From her bedroom, she heard a noise from a motor vehicle outside her house and found that Myers was stuck in a ditch.  She assisted Myers in towing his vehicle from the ditch near her home, and then returned to her home.  She subsequently heard a noise, and when she looked outside of her bedroom window, she observed Myers' vehicle in her driveway.  She opened her gun safe, loaded her handgun, and fired a shot over the vehicle in an effort to "scare" him off.  In response, Myers "peeled out" of her driveway.  The victim then went to the bathroom to prepare for bed.  When she returned, she found Myers sitting on her bed.  She testified that she dove for her gun and struggled with Myers, but that he subsequently took the gun from her and laughed at her.  She testified that Myers repeatedly raped her at gunpoint with his mouth and fingers, forced her to consume cocaine, and held her against her will.  She testified that she watched Myers leave early the next morning.  Feeling unclean, she took a hot shower.  She also stripped the sheets off of her bed and washed them because she wanted to erase the incident from her mind.  She attempted to go about her normal routine.  She testified that she did not immediately call the police because she was afraid that he might come back and hurt her.  She also had sexual relations with her boyfriend in an attempt to "give [her]self back to him." She also testified that she returned home from church a couple of days later and found that her front door had been kicked in.

2

On July 3, 2010, Myers was stopped for a DUI in a driveway adjacent to the victim's home.  The officer testified that he was "polite, and cordial, and cooperative." He was released from custody a few hours later.  On July 4, 2010, the victim reported the rape to the police.  Myers was questioned about the rape.  Initially, he denied knowing the victim or ever being present in the victim's home.

At trial, Myers testified that he saw the victim at DeeCob's bar.  He had purchased cocaine from an individual at the bar and planned to "whoop it up for the next four or five days over the holidays" and his birthday.  Myers testified that he and the victim made plans to do cocaine together later that night.  However, he kept his distance from her at the bar because she appeared to be with her boyfriend.  In accordance with their plan, Myers followed the victim home later that evening.  He backed into what he thought was a dead-end road, and ended up stuck in the pasture.  The victim pulled his vehicle out of the pasture with her truck and instructed him to park on the other side of the house.  The two proceeded to talk, drink beer, and use cocaine.  Myers denied ever seeing the victim naked or touching her.  Evidence was introduced by the State revealing a DNA profile matching Myers on a cigarette lighter and a drinking glass.

On July 27, 2010, Myers was charged with rape, kidnapping, and aggravated burglary.  Each charge carried firearm specifications.  Myers was also charged with having a weapon while under disability, menacing by stalking, and operating a vehicle under the influence of alcohol.  On August 30, 2010, a supplemental indictment was filed and Myers was charged with two additional counts of rape, a sexually violent offender specification, a repeat violent offender specification, and corrupting another with drugs.

On September 27, 2010, the case proceeded to a jury trial on all charges except the sexually violent offender specification.  The trial court granted Myers' motion for acquittal with regard to the repeat violent offender specification.  On October 1, 2010, the jury returned a verdict of guilty for all offenses considered.  On October 18, 2010, the jury returned a guilty verdict for the sexually violent predator charge.  On November 23, 2010, Myers was sentenced to an indefinite term of life in prison with parole eligibility after 40 years.

*State v. Myers*, No. CA-25737, 2012 WL 1419104 (Ohio Ct. App. Apr. 25, 2012).

Myers filed a timely appeal of his convictions, and raised the following three assignments of error on direct appeal:

> 1.  Evidence of other acts is not admissible to prove the character of a person in order to prove conformity therewith.  It may, however, be introduced to prove motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident.  Evid.R. 404(B).  The trial court committed reversible error and/or abuse of discretion in admitting evidence of the Wisconsin conviction over defense objections.
>
> 2.  The trial court denied Myers the opportunity to confront the witnesses against him as guaranteed to him by the Sixth Amendment of the United States Constitution.
>
> 3.  Trial counsel provided ineffective assistance of counsel which was prejudicial to Myers.

*Myers*, 2012 WL 1419104. at *2, *5, *7.  The court of appeals affirmed the judgment of the trial court.  *Myers*, 2012 WL 1419104, at *9.

Myers next filed a timely notice of appeal to the Supreme Court of Ohio, and set for the following three propositions of law:

> 1.  Evidence of other acts is not admissible to prove the character of a person in order to prove conformity therewith.  It may, however, be introduced to prove motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident.  Evid.R. 404(B).  Did the trial court commit reversible error or commit an abuse of discretion in admitting evidence of the Wisconsin conviction over defense objections?
>
> 2.  [Petitioner] contends that the trial court's decision to limit cross-examination of the complaining witness denied him the opportunity to confront the witnesses against him.  Did the trial court commit error in limiting the cross-examination of the complaining witness?
>
> 3.  Trial counsel provided ineffective assistance of counsel which was prejudicial to the defendant.

4

(Doc. 7, at 6.)  On Sept. 5, 2012, the state supreme court denied jurisdiction and dismissed the appeal as not involving any substantial constitutional question. *State v. Myers*, 132 Ohio St.3d 1516, 974 N.E.2d 113 (2012).

Myers filed a timely petition for a writ of habeas corpus.

## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus.  Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court.  The Supreme Court, in *Williams v. Taylor*, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2002).  *See also Lorraine v. Coyle*, 291 F.3d 416, 421-422 (6th Cir. 2002), *cert. denied*, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams*, 529 U.S. at 405. *See also Price v. Vincent*, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect. Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law. *Williams*, 529 U.S. at 410-12; *Lorraine*, 291 F.3d at 422.

## III.  PROCEDURAL DEFAULT

The respondent contends that the first, and part of the third, grounds of the petition are procedurally defaulted. (Doc. 7, at 10-13.)

A habeas claim may be procedurally defaulted in two distinct ways. First, by failing to comply with state procedural rules. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). Second, by failing to raise a claim in state court, and to pursue the claim through the state's ordinary review process. *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)).

A habeas petitioner cannot obtain relief unless he has completely exhausted his available state remedies. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001) (citing *Coleman v. Mitchell*, 244 F.3d

533, 538 (6th Cir.), *cert. denied*, 534 U.S. 977 (2001)).  To satisfy the  exhaustion requirement, a habeas petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.  The exhaustion requirement is satisfied when the highest court in the state has been given a full and fair opportunity to rule on the petitioner's claims.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994) (citing *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990)).  A petitioner cannot circumvent the exhaustion requirement by failing to comply with state procedural rules.  *Coleman*, 501 U.S. at 731-732; *Buell*, 274 F.3d at 349.

Where a state court has failed to address a prisoner's federal claim(s) because the prisoner failed to meet a state procedural requirement, the state judgment rests on independent and adequate state procedural grounds, barring federal habeas relief.  *Coleman*, 501 U.S. at 729-730; *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Morales v. Coyle*, 98 F.Supp.2d 849, 860 (N.D. Ohio 2000), *aff'd*, 507 F.3d 916 (6th Cir. 2007).  Thus, where a state prisoner has procedurally defaulted his federal claims in state court, habeas review of those claims is barred "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Buell*, 274 F.3d at 348 (quoting *Coleman*, 501 U.S. at 750); *Davie v. Mitchell*, 324 F.Supp.2d 862, 870 (N.D. Ohio 2004), *aff'd*, 547 F.3d 297 (6th Cir. 2008), *cert. denied*, 558 U.S. 996 (2009).

7

The court considers four factors to determine whether a claim has been procedurally defaulted:  (1) the court must determine whether there is a state procedural rule that is applicable to the petitioner's claim, and whether the petitioner failed to comply with the rule; (2) the court must decide whether the state courts actually enforced the procedural sanction; (3) the court must decide whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of the federal claim; and, (4) the petitioner must demonstrate that there was cause for her not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error.  *Buell*, 274 F.3d at 348 (citing *Maupin*, 785 F.2d at 138); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001) (quoting *Maupin*).

Any claims that Myers could have asserted in his direct appeal, but did not, are defaulted under the Ohio doctrine of res judicata.  *Coleman*, 244 F.3d at 538; *State v. Szefcyk*, 77 Ohio St.3d 93, 671 N.E.2d 233 (1996) (syllabus); *State v. Perry*, 10 Ohio St.2d 175, 176, 226 N.E.2d 104, 105-106 (1967) (syllabus, ¶9).  The Ohio rule of res judicata satisfies the first three factors in *Maupin*.  *Jacobs*, 265 F.3d at 417.  The fourth factor is that the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error.  "Cause" for a procedural default is ordinarily shown by "some objective factor external to the defense" which impeded the petitioner's efforts

to comply with the state's procedural rule.  *Coleman*, 501 U.S. at 753 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

### A.  Evidentiary Ruling

The first ground of the petition is:  "The trial court committed reversible error or an abuse of discretion in admitting evidence of the Wisconsin conviction over defense objections."  The respondent argues that Myers procedurally defaulted this claim because he failed to fairly present it to the state courts as a federal constitutional claim.  (Doc. 7, at 12-13.)

The claim was presented on direct appeal as follows:

> Evidence of other acts is not admissible to prove the character of a person in order to prove conformity therewith.  It may, however, be introduced to prove motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident.  Evid.R. 404(B).  The trial court committed reversible error and/or abuse of discretion in admitting evidence of the Wisconsin conviction over defense objections.

(Doc. 7, at 5;  *Myers*, 2012 WL 1419104, at *2.)  This claim is presented simply as an allegedly erroneous evidentiary ruling, without raising any federal constitutional issues, and consequently the court of appeals addressed it as an issue of state law.  *Myers*, 2012 WL 1419104, at *2-*4.

The "clearly established rule" is that alleged errors of state law, "especially rulings regarding the admission or exclusion of evidence," are not within the purview of a federal habeas court.  *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir.

1988). *See also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir.), *cert. denied*, 540 U.S. 930 (2003). This court must presume that the Ohio state courts correctly interpreted Ohio evidence law in their evidentiary rulings. *Small v. Brigano*, No. 04-3328, 2005 WL 1432898, at *5 (6th Cir. June 17, 2005).

Even assuming, for the sake of argument, that the evidentiary ruling was erroneous, Myers would not be entitled to habeas relief on this claim. Alleged state court errors of evidentiary rulings do not rise to the level of constitutional claims warranting habeas relief "unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *Broom v. Mitchell*, 441 F.3d 392, 406 (6th Cir. 2006), *cert. denied*, 549 U.S. 1255 (2007). *See also Bugh*, 329 F.3d at 512. Courts have defined the category of errors that are fundamentally unfair very narrowly. *Bugh*, 329 F.3d at 512. Myers has not made a convincing argument that his case qualifies.

Moreover, in *Bugh*, the Sixth Circuit found that there was no clearly established Supreme Court precedent which holds that a state violates due process by admitting other bad acts evidence. *Bugh*, 329 F.3d at 512. "While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence[2], it has not explicitly addressed the issue in constitutional terms."

---

[2] Ohio Rule of Evidence 404(B) is substantially similar to the federal rule. *Broom*, 441 F.3d at 405 n.20.

10

*Id.* at 513 (citing *Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988)).  The court upheld the district court's denial of habeas relief, finding that there was no Supreme Court precedent that the trial court's ruling could be "contrary to," under the AEDPA.  *Id.*  Myers has not provided any such precedent.

In addition, because this claim was not fairly presented to the state court of appeals as a federal claim, this court does not have jurisdiction to grant the petition on the basis of it.  *Baldwin v. Reese*, 541 U.S. 27 (2004); *Jacobs*, 265 F.3d at 415; *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000), *cert. denied*, 532 U.S. 958 (2001).  To "fairly present" the claim to the state courts, a habeas petitioner must present his claim as a federal constitutional issue, not as an issue arising under state law.  *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).

Myers has failed to demonstrate that the state court rulings on the evidentiary issue are contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. The petition should not be granted on the basis of the first ground.

## B.  Ineffective Assistance of Counsel

The third ground of the petition is "Trial counsel provided ineffective assistance of counsel which was prejudicial to the defendant."  Myers presents the following in support of his claim:

> Trial counsel's performance fell below acceptable standards in that he allowed evidence to be presented [which] should [have] been excluded. He stipulated to DNA that the defendant said was not his and failed to get finger prints and DNA testing on the gun[,] baking soda box[,] and crushed can and cheder [?] chest top[,] and failed to object in a timely [manner] [illegible]. The defendant requested [to testify]. [Counsel] [failed] to obtain appropriate and adequate rebuttal evidence of the complaining witness.

(Doc. 1, at [7]-[8].)

The respondent contends that, although Myers raised a claim of ineffective assistance on appeal, he argued the claim on a different basis. The respondent points out that Myers did not raise a DNA issue on appeal. The only argument in his petition which was raised in the state courts was that trial counsel was not prepared for trial, and failed to engage in an investigation which would have revealed "appropriate and adequate rebuttal evidence of the complaining witness." (Doc. 7, at 13; *see generally Myers*, 2012 WL 1419104, at *8-*9.)

The Sixth Circuit has held that "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." Wong v. Money, 142 F.3d 313, 322 (6th Cir. 1998); see also Brandon v. Stone, No. 06-5284, 2007 WL 786330, at *1 (6th Cir. March 15, 2007) (citing Williams v. Bagley, 380 F.3d 932, 969 (6th Cir. 2004)). Those aspects of the ineffective assistance claim which Myers did not raise on direct appeal have not been exhausted.

Myers cannot return to state court to exhaust this claim because the Ohio Supreme Court has ruled that arguments that could have been raised in an initial

appeal (and were not) will be barred from consideration on appeal following remand, under the doctrine of res judicata.  State v. Hutton, 100 Ohio St.3d 176, 182, 797 N.E.2d 948, 956 (2003); State v. Gillard, 78 Ohio St.3d 548, 549, 679 N.E.2d 276 (1997), cert. denied, 523 U.S. 1108 (1998).  State law no longer would permit Myers to raise this particular claim, hence it is defaulted.  See Williams, 460 F.3d at 806; Adams v. Bradshaw, 484 F.Supp.2d 753, 769 (N.D. Ohio 2007).

The court will address the argument which exhausted in the state courts.

## IV.  INEFFECTIVE ASSISTANCE OF COUNSEL

The state court of appeals ruled on the exhausted portion of Myer's ineffective assistance claim as follows:

> In his third assignment of error, Myers argues that his trial counsel provided ineffective assistance of counsel.  We do not agree.  This Court must analyze claims of ineffective assistance of counsel under a standard of objective reasonableness.  See Strickland v. Washington, 466 U.S. 668, 688 (1984); State v. Bradley, 42 Ohio St.3d 136, 142 (1989).  Under this standard, a defendant must show (1) deficiency in the performance of counsel "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) that the errors made by counsel were "so serious as to deprive the defendant of a fair trial[.]" Strickland, 466 U.S. at 687.  A defendant must demonstrate prejudice by showing that, but for counsel's errors, there is a reasonable possibility that the outcome of the trial would have been different.  Id. at 694.  In applying this test, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Id. at 689.
>
> The defendant has the burden of proof and must overcome the strong presumption that counsel's performance was adequate or that counsel's action might be sound trial strategy.  State v. Smith, 17 Ohio St.3d 98,

13

100 (1985).  "Ultimately, the reviewing court must decide whether, in light of all the circumstances, the challenged act or omission fell outside the wide range of professionally competent assistance."  State v. DeNardis, 9th Dist. No. 2245, 1993 WL 548761, *2 (Dec. 29, 1993), citing Strickland, 466 U.S. at 689.  Furthermore, an attorney properly licensed in Ohio is presumed competent.  State v. Lott, 51 Ohio St.3d 160, 174 (1990).

In demonstrating prejudice, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."  State v. Bradley, 42 Ohio St.3d 136 (1989), paragraph three of the syllabus.  Further, an appellate court need not analyze both prongs of the Strickland test if it finds that Appellant failed to prove either.  State v. Ray, 9th Dist. No. 22459, 2005–Ohio–4941, ¶ 10.

* * * * * *

. . . Myers argues that had defense counsel adequately prepared for trial, he would have been in a better position to provide proof of the complaining witness' prior false allegations.  Thus, the court may have been more inclined to allow cross-examination of these accounts.  However, as we concluded in the second assignment of error, because the prior allegations were against former husbands rather than the defendant, and because the 1999 incident occurred eleven years prior to the events in question, the probative value of such evidence had diminished.  Therefore, even if counsel had produced additional evidence to support the allegations, the evidence would still not have been "clearly probative of truthfulness or untruthfulness" under Evid.R. 608(B).  This argument is without merit.

*Myers*, 2012 WL 1419104, at *7-*9.  The state court identified the controlling U.S. Supreme Court precedent, thus the court's inquiry relates to whether the state court decision applied that precedent unreasonably.

Under the Sixth Amendment to the U.S. Constitution, "the right to counsel is the right to effective assistance of counsel."  Missouri v. Frye, 132 S.Ct. 1399, 1404 (2012); Joshua v. DeWitt, 341 F.3d 430, 437 (6th Cir. 2003) (quoting McMann v.

14

Richardson, 397 U.S. 759, 771 n.14 (1970).  The Sixth Circuit discussed the general

standard for ineffective assistance of counsel in Monzo v. Edwards:

> To establish ineffective assistance of counsel under Strickland, the
> defendant must show that his counsel's performance fell below an
> objective standard of reasonableness and that his counsel's errors were
> so serious as to prejudice the defendant.  Review of counsel's
> performance is highly deferential and requires that courts "indulge a
> strong presumption that counsel's conduct falls within a wide range of
> reasonable professional assistance."  To establish prejudice, the
> defendant "must show that there is a reasonable probability that, but
> for counsel's unprofessional errors, the result of the proceeding would
> have been different.  A reasonable probability is a probability sufficient
> to undermine confidence in the outcome."

Monzo v. Edwards, 281 F.3d 568, 579 (6th Cir. 2002) (internal citations omitted).

See generally Strickland v. Washington, 466 U.S. 668, 689 (1984) (two-part test).

In the habeas context, this court considers petitioner's ineffective assistance

claim "within the more limited assessment of whether the state court's application

of Strickland to the facts of this case was objectively unreasonable."  Washington v.

Hofbauer, 228 F.3d 689, 702 (6th Cir. 2000).

The Supreme Court has recently affirmed in several cases that this court

must approach the state court's rulings in a highly deferential manner.  The

Supreme Court stated in Harrington v. Richter that the "pivotal question" of

whether the state court's application of Strickland standard was unreasonable is

different from simply deciding whether counsel's performance fell below

Strickland's standard.  Harrington v. Richter, 562 U.S. 86, 101 (2011).   The focus

on habeas review is "not whether counsel's actions were reasonable," rather, the

15

question is "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  Richter, 562 U.S. at 105.

The Court in Richter instructed that the petitioner must show that the ruling of the state court "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Richter, 562 U.S. at 103; see also Montgomery v. Bobby, 654 F.3d 668, 676 (6th Cir. 2011) (en banc), cert. denied, 132 S.Ct. 2376 (2012) (quoting Richter).  The Court acknowledged that, under the AEDPA, this standard was "difficult to meet," however, it was "meant to be" so.  Id. at 102; see also Montgomery, 654 F.3d at 676.

Reviewing the state court's ruling in accordance with the guidance set forth by the U.S. Supreme Court in Richter, the court finds that Myers has failed to demonstrate that the state court's application of Strickland  was unreasonable. Myers has failed to establish that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court.  The petition should not be granted on the basis of the third ground.

## V.  CONFRONTATION

The second ground of the petition is based on the following:  "The trial court denied the defendant the opportunity to confront the witnesses against him."

Myers characterized the issue thus:  "Petitioner contends that the trial court's decision to limit cross-examination of the complaining witness denied him the opportunity to [confront] the witnesses against him."  (Doc. 1, at 6.)

The Confrontation Clause of the Sixth Amendment provides an accused with the right to be confronted with the witnesses against him.  *Crawford v. Washington*, 541 U.S. 36, 42 (2004); *Pointer v. Texas*, 380 U.S. 400, 406 (1965).  A central purpose of the Confrontation Clause is to allow the defendant the opportunity to cross-examine the witnesses against him.  *Vasquez v. Kirkland*, 572 F.3d 1029, 1035-1036 (9th Cir. 2009), *cert. denied*, 558 U.S. 1126 (2010) (citing *Davis v. Alaska*, 415 U.S. 308, 315-316 (1974)); *Drake v. Woods*, 547 F.Supp.2d 253, 264 (S.D. N.Y. 2008).  The Confrontation Clause only guarantees the opportunity for cross-examination, and the right to confront one's accusers normally is satisfied if defense counsel receives wide latitude at trial to question witnesses.  *Pennsylvania v. Ritchie*, 480 U.S. 39, 53 (1987); *see also Nevada v. Jackson*, 133 S.Ct. 1990, 1994 (2013); *Ross v. District Attorney of County of Allegheny*, 672 F.3d 198, 207 (3d Cir. 2012).

The state court of appeals addressed the standard under the Sixth Amendment, in part, as follows:

> Questions of the scope and effect of constitutional protections, such as the Sixth Amendment, are matters of law and therefore reviewed de novo.  See United States v. Wilmore, 381 F.3d 868, 871 (9th Cir.2004). The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]"  The right of

confrontation requires, whenever possible, testimony and
cross-examination to occur at trial.  State v. Allen, 8th Dist. No. 82556,
2004–Ohio–3111, ¶ 17.  The United States Supreme Court held in
Crawford v. Washington, 541 U.S. 36 (2004), that this procedural
guarantee applies to both federal and state prosecutions.

However, a determination regarding admissibility of evidence is within
the sound discretion of the trial court. [citing state cases] . . .

*Myers*, 2012 WL 1419104, at *5.

On appeal, Myers argued that the trial court erred in refusing to allow him to
cross-examine the victim regarding evidence that she "had made false allegations
against men in her life on two previous occasions."  *Myers*, 2012 WL 1419104, at *5.
The court allowed Myers to ask questions concerning one of these instances,
involving a 2008 domestic violence matter, a criminal case which was subsequently
dismissed.  *Id.* at *5.-*6.

The trial court, however, did not permit inquiry into a domestic violence
accusation which allegedly arose during the victim's 1999 divorce proceedings.
Myers had learned of this information through a newspaper article.  The state had
argued that the 1999 case was irrelevant because no charges were filed.  The court
of appeals noted:

The trial court declined to permit inquiry into the 1999 case because
Myers did not have "a certified copy of anything," it was "in a divorce
format," and the court did not find a reasonable basis for pursuing that
line of questioning.  Myers argued that he did not need to have a
certified journal entry.  Ultimately, the trial court disallowed inquiry
into the 1999 divorce case, but allowed Myers to ask questions
regarding the 2008 domestic violence matter because it was a criminal
case.

*Myers*, 2012 WL 1419104, at *6.

After reviewing several relevant cases, the court of appeals ruled on Myers'

claim as follows:

> We conclude that trial court did not err in refusing to allow Myers to
> cross-examine the victim regarding the 1999 incident.  Myers initially
> stated that the victim "accused her ex-husband of domestic violence
> and also abuse.  He was charged with that crime" but the charges were
> dropped.  When the court inquired into a journal entry of conviction,
> Myers revealed that the case was a 1999 domestic relations case.  The
> judge stated, "On the '99 case, we don't necessarily have a crime.  I
> think we've just got a divorce from my impression of what you said."
> Myers agreed.  The trial court ultimately concluded that it did not
> "find sufficient probative value on the '99 divorce." It stated that "what
> happened in [the 1999] divorce case isn't relevant.  It's old.  [It] should
> not be inquired into." The court did, however, allow Myers to question
> the 2008 incident.
>
> Here, . . . the prior allegations were not against the defendant in the
> case at hand.  Furthermore, the 1999 incident had occurred eleven
> years prior to the events in question.  The passage of time has been
> held to diminish the probative value of such questioning.  Finally,
> Myers was permitted to question the victim regarding the 2008
> incident.  As such, he was able to raise doubts about her credibility.
>
> For the reasons set forth above, we conclude that the trial court did not
> abuse its discretion or violate the constitutional rights of Mr. Myers by
> disallowing inquiry into allegations regarding the 1999 domestic
> relations action against her ex-husband.

*Myers*, 2012 WL 1419104, at *7 (citations omitted).

Myers was able to cross-examine the victim at trial.  See, e.g., *Myers*, 2012

WL 1419104, at *4 ("The victim testified in great detail about the events" of the

crime); and *6 (court allowed questions concerning 2008 matter).  The

Confrontation Clause only "guarantees an opportunity for effective cross-

examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."   Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curiam); see also Drake, 547 F.Supp.2d at 264 (same).  The Supreme Court has found that the Confrontation Clause does not prevent a trial judge from imposing "reasonable limits" on cross-examination.  Vasquez, 572 F.3d at 1036 (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)).  Thus, "trial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."  Van Arsdall, 475 U.S. at 679; see also Washington v. Renico, 455 F.3d 722, 729 (6th Cir. 2006), cert. denied, 549 U.S. 1306 (2007); Drake, 547 F.Supp.2d at 264.

The court does not find that the state court's determination in this matter was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court.  The petition should not be granted on the basis of the second ground.

RECOMMENDATION

It is recommended that the petition for a writ of habeas corpus be denied.

Dated:  Apr. 8, 2015          /s/ Kenneth S. McHargh
                             Kenneth S. McHargh
                             United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).